UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
JOSEPH CARTRIGHT, RUTH FOWLER, and  :
CAROLIN DEKEYSER,                   :  Index No.:
                                    :
                  Plaintiffs,       :
                                    :  **COMPLAINT**
        v.                          :
                                    :  **JURY TRIAL DEMAND**
MATTHEW LODGE,                      :
                                    :
                  Defendant.        :
------------------------------------------------------------------- x

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Joseph Cartright ("Mr. Cartright,"), Ruth Fowler ("Ms. Fowler"), and Carolin Dekeyser[1] ("Ms. Dekeyser"), by and through their counsel, Wigdor LLP, as and for their Complaint in this action against Defendant Matthew Lodge ("Lodge" or "Defendant"), hereby allege the following:

### PRELIMINARY STATEMENT

1.      Early in the morning of October 16, 2015, the lives of five innocent people, including a young boy of nine years old, were forever changed by the vicious and violent attacks by Defendant Matthew Lodge, a professional rugby player with a history of violence and animosity towards women.

2.      As Ms. Dekeyser and her friend were returning to a mutual friend's apartment after a night out in New York City, they were unexpectedly attacked by a clearly intoxicated Lodge, who was apparently driven to threatening two innocent women when a cab driver refused to pick him up.

---

[1] Mr. Cartright, Ms. Fowler and Ms. Dekeyser are hereinafter collectively referred to as "Plaintiffs."

3. Lodge quickly shifted from asking Ms. Dekeyser and her friend to return with him to Australia to, incredibly, threatening that "This is the night you die," in response to their refusal to accompany him.

4. Understandably fearing for their safety when faced with an enormous man standing 6'4" and well over 200 pounds threatening their lives, the two women ran to their friend's apartment building, only to be trapped in a small enclosed foyer with an individual who was cursing at them and repeatedly threatening their lives.

5. It was only because of the heroic intervention of Joseph Cartright, another resident of the building, and his wife, Ruth Fowler, that Ms. Dekeyser and her friend were able to escape Lodge's clutches and avoid grievous bodily harm, intervention for which they will be eternally grateful.

6. However, not satisfied with having terrorized two innocent women who were less than half his size, Lodge turned his alcohol- and drug-induced rage onto Mr. Cartright, breaking into his apartment where his wife, Ms. Fowler, and their nine-year-old son had been peacefully sleeping.

7. In response to Mr. Cartright's pleas that Lodge leave him and his family alone, Lodge's violent threats became a reality as he savagely beat Mr. Cartright, locked himself in the couple's apartment with Ms. Fowler and their son, and attempted to attack the terrified mother, who was cowering in the bathroom with their son as Lodge rained blows on the door, nearly breaking it wide open.

8. The intervention of the NYPD, who subdued Lodge at gunpoint, ended the tense standoff and potentially saved the lives of all involved.

9. Home invasion strikes where people feel most protected. The ruthless act violates the sanctity of the home. When breaking and entering occurs in occupied homes, it is a traumatic experience that has lasting effects on victims. Criminals who commit such acts show a complete lack of respect for others and grave indifference to the victims they terrorize.

10. This action is brought to address the grief and trauma suffered by Plaintiffs when Defendant Lodge brutally invaded their personal residence and terrorized his victims.

11. The horrifying home invasion occurred on October 16, 2015, but the psychological toll of being attacked in their own home is something that will forever scar Plaintiffs and requires justice -- Defendant Lodge must be held accountable.

## JURISDICTION AND VENUE

12. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332 and 1343 as this action involves a dispute between Plaintiffs Cartright and Fowler, who are citizens of New York state, Plaintiff Dekeyser, who is a citizen of Germany, and Matthew Lodge, who is domiciled in Australia. Additionally, Plaintiffs are seeking damages in excess of $75,000 for Defendant's unlawful conduct complained of herein.

13. The Court has supplemental jurisdiction over Plaintiffs' related claims arising under state law pursuant to 28 U.S.C. § 1367(a).

14. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action occurred in this district.

## PARTIES

15. Plaintiff Dekeyser was visiting New York City with a friend on the night on which they were both violently attacked by Defendant Lodge. Ms. Dekeyser is a citizen of Germany.

16. Plaintiff Joseph Cartright is a fashion photographer who resides on the Upper West Side in New York City, New York. It was through Mr. Cartright's heroic intervention that all of the parties in this case escaped with their lives.

17. Plaintiff Ruth Fowler is a resident of the Upper West Side in New York City where she lives with her husband, Mr. Cartright, and their young son. Ms. Fowler and her son were trapped by Lodge in their apartment after he forced his way in and threatened their safety and well-being.

18. Defendant Matthew Lodge is a citizen of Australia and professional rugby player with a history of violence, and especially violence against women, who attacked Plaintiffs and others, including Mr. Cartright and Ms. Fowler's young son, in an intoxicated rage.

## FACTUAL ALLEGATIONS

19. On October 16, 2015, Ms. Dekeyser and a close friend, who were both in New York on vacation, hailed a taxi to take them to the Upper West Side where they were staying in a friend's apartment.

20. When they arrived, a thickly-muscled, visibly intoxicated individual approached the cab as they were attempting to pay their fare, leaned on the right side of the taxi and began speaking aggressively to the cab driver.

21. The driver, alarmed by the belligerent manner in which this enormous individual, who stood approximately 6'4" and 240 pounds, was behaving, urged Ms. Dekeyser and her friend to leave the cab on the left side and get home as quickly as possible.

22. Unbeknownst to Ms. Dekeyser and her friend, the bellicose individual leaning menacingly on their cab was Matthew Lodge, a 20-year-old professional rugby player from Australia in New York on vacation who had previously been stood down from his former club,

4

the Sydney West Tigers, in August 2015 after being charged with common assault, malicious damage, stalking and intimidation of another female.

23.     Additionally, Lodge was previously disciplined by Australia's National Rugby League for proudly writing the invective, "cunt" on his wristband during a match, demonstrating his animosity towards women.

24.     Not yet fully appreciating the danger in which they had found themselves, Ms. Dekeyser and her friend complied with the driver's suggestion, but turned around when they heard the cab speeding away.

25.     To their surprise, the taxi had left without taking the inebriated hulking stranger with it.  Angry at being refused by the cab driver, Lodge turned his attention to Ms. Dekeyser and her friend as the next victims of his violent outbursts.

26.     Even as they turned to walk away, Lodge began yelling after them, telling them that they should "come to Australia" with him.

27.     Enraged when the two women refused to respond, Lodge chased after them, violently grabbing Ms. Dekeyser by the shoulders, spinning her around so that she faced him and holding her with an iron grip so that she could not escape.

28.     As he towered over her, his face was a mixture of confusion and barely-contained rage, and he began to ramble about his desire to take the two women to Australia to meet his family.

29.     Ms. Dekeyser attempted to calm Lodge down, explaining to him that, "sir, I'm not coming with you" and asking him to release her.

30.     When Ms. Dekeyser was able to break free from Lodge's grasp, she and her friend hurried towards the apartment building in which they were staying, only for Lodge to

5

catch up to them and once again grab and spin Ms. Dekeyser with his powerful hands, wrapping her in his painful grip and screaming in her face from inches away.

31. Ms. Dekeyser felt helpless being in the clutches of an intoxicated and visibly disturbed individual who was so much larger and more powerful than she was, but she nevertheless attempted to remain calm and convince Lodge to once again release her.

32. It was only when Lodge became momentarily distracted that Ms. Dekeyser was able to escape, running with her friend to the building in which they both were staying while Lodge cursed and screamed after them about how he was going to make them come with him.

33. Ms. Dekeyser and her friend ran into the small foyer leading to the five-story brownstone and in a desperate call for help, frantically began to buzz all ten apartments repeatedly, while shouting for help from any of the residents in the building.

34. Lodge followed them into the foyer and positioned himself between Ms. Dekeyser and the door. In a moment that will haunt Ms. Dekeyser for the rest of her life, he told her and her friend, "**Do you think you're going to die? This is the night you're going to die.**"

### Lodge Terrorizes Cartright and His Family

35. Mr. Cartright and his wife, Ms. Fowler, have resided at their apartment located on West End Avenue, New York, NY, for more than 20 years. The couple has one son, who is 9 years old.

36. The brownstone in which they reside has a full set of stairs leading from the sidewalk up to the front entrance. The building does not have a doorman and instead, tenants have a key to the front entrance as well as to their individual apartments.

37. Visitors and tenants first enter the building through a small foyer area where the ten apartments are listed on the wall with a doorbell. Tenants can buzz visitors through the front door.

38. At approximately 4:00 a.m. that morning, Mr. Cartright and Ms. Fowler were unexpectedly roused from sleep by the front door buzzer. Because their apartment is located closest to the building's front entrance, over the years it was not unusual for Mr. Cartright to respond in the middle of the night to residents of the building who had occasionally locked themselves out.

39. Hearing the front buzzer and the sound of two women shouting, Mr. Cartright stumbled into the foyer and recognized two young women in the vestibule who he knew were staying with another tenant in the building, along with a massive man who he had never seen before.

40. Mr. Cartright opened the door to the apartment building slightly and asked the two women if they were ok, at which point Ms. Dekeyser and her friend said that Lodge had been threatening them, that they were terrified for their safety and begged him to call the police.

41. Confused by this sudden burst of activity appearing on his literal front door, Mr. Cartright had no idea who this maniacal, cursing 240-pound white man was or why he was in his foyer threatening to kill people. However, thinking nothing of his own personal safety despite being confronted by a drunken man substantially larger than him, Mr. Cartright attempted to calm Lodge down as he repeated his threat towards Ms. Dekeyser and her friend, cursing at them and telling them "this is the night you will die."

42. Mr. Cartright immediately realized that the muscular young man was under the influence of alcohol, drugs or both, and in a non-confrontational manner, attempted to convince Lodge to leave.

43. Mr. Cartright told the stranger that this was his home, that his wife and young son were asleep in their apartment, and pleaded with him to leave.

44. As Mr. Cartright motioned Lodge towards the front door, Lodge became more irate, shouting at and grabbing Mr. Cartright.

45. Lodge told him that he **better not "fucking touch him"** and that tonight Mr. Cartright **"was going to die**.**"**

46. Meanwhile, Ms. Dekeyser and her friend ran to the apartment of the friend with whom they were staying, Guillaume Roemaet, to seek help and roused him out of bed. Mr. Roemaet came up the stairs, shirtless, to see if he could help Mr. Cartright, who was a friend of his.

47. Lodge, noticing the tattoos on Mr. Roemaet's torso, turned towards him, pushing Mr. Cartright aside and saying, "You don't scare me. I have tattoos too. **I'm going to kill you!**"

48. Enraged, he began stalking towards Mr. Roemaet, who was standing in front of Ms. Dekeyser and her friend, unbuttoning his shirt and screaming additional threats at them as he did so. Mr. Roemaet quickly pushed Ms. Dekeyser and her friend into the apartment and locked the door to attempt to keep Lodge out.

49. Suddenly, Mr. Cartright, still bewildered by the situation he was in, was faced with a hulking Lodge who was in a rage and rearing to fight.

50. Before Mr. Cartright could decide how best to deal with this violent, drunken man who he was confronted with, Lodge forced himself into Mr. Cartright's apartment, where

Ms. Fowler and their young son were sleeping. Panicking about his wife and son's safety, Mr. Cartright followed Lodge into their living room.

51. Once Lodge entered the apartment, Mr. Cartright shouted to Ms. Fowler to call the police and warned Lodge that the police were on their way and that he should just leave rather than make the situation worse.

52. Rather than heeding Mr. Cartright's warnings, Lodge proceeded to demonstrate the extent to which he was intoxicated, pacing back and forth in the apartment and bizarrely shouting, "My name is Matthew Lodge. I come in peace. Salaam Alaikum."[2] Lodge repeated this statement over and over. Lodge also repeated the statement, "My lawyer will take care of all of this, do not worry."

53. While Ms. Fowler was still in bed, and on the telephone with 911, Lodge entered the bedroom, appearing to not even notice her, and repeating the above ramblings. Inexplicably, Lodge attempted to open the closet in the bedroom without success. Frustrated, he eventually left the bedroom and returned to the living room to confront Mr. Cartright.

54. While this was happening, their son, who had unsurprisingly been awoken by the commotion, ran into his parents' bedroom despite Ms. Fowler's attempts to convince him to stay in his own room, as far away from Lodge as possible.

55. Trying to protect his family, Mr. Cartright cajoled Lodge to their front door, stepping into the foyer of the building, desperately hoping to convince him that, once he was outside the apartment, Lodge should leave the building entirely.

56. Once both men were in the foyer, Ms. Fowler, who had been listening closely, quickly closed the door to the apartment.

---

[2] "Salaam Alaikum," is a common greeting among Muslims that translates, "Peace to you."

57. Enraged at having the door shut behind him, Lodge grabbed Mr. Cartright, put him into a headlock, and repeatedly punched Mr. Cartright in the head, landing multiple blows to his left ear and skull. Lodge then shoved the injured Mr. Cartright deeper into the building foyer, turned to the apartment door, and shoved his way through, closing the door behind him.

58. As Mr. Cartright went down, Lodge ran back into the apartment and shoved furniture behind the door, preventing Mr. Cartright from entering.

59. Frantic, Ms. Fowler ran to the bedroom, grabbed her son and locked them in the bathroom located off of the bedroom.

60. Unfortunately, the lock on the bathroom door was a simple interior lock and could not hope to withstand an assault by someone as strong and fueled by rage as Lodge. Ms. Fowler, recognizing this fact and putting her son's safety above all else, bravely forced her back to the door, using the wall and sink as leverage.

61. From there, Ms. Fowler heard Lodge in the kitchen where he began throwing plates and glasses across the room; breaking everything he could put his hands on.

62. During this violent tirade, Lodge came back into the bedroom where Ms. Fowler could hear him once again fumbling with the closet door.

63. Then, apparently noticing the closed bathroom door for the first time, Lodge attempted to enter. When he could not do so because of the way that Ms. Fowler had positioned herself, he began punching the door at the same level where Ms. Fowler's head was braced. Wood splintered around her head and into the bathroom, and Lodge created the beginning of a hole in the bathroom door. She turned off the bathroom light and told her son to get into the bathtub.

64. Luckily, Lodge aborted his assault on the bathroom door and instead returned to the kitchen where he broke more plates and glasses and then began throwing furniture in the living room.

65. While his wife and son were locked in the bathroom and unable to enter the apartment, Mr. Cartright was understandably terrified at the sounds coming from his apartment, having no way of knowing if his family was safe. He ran outside barefoot, to attempt to see from an outside window what was happening in the apartment and to see if the police were arriving. In a panic, Mr. Cartright ran back and forth between the apartment front door and out to the sidewalk, desperate to find a way to get his wife and son away from Lodge.

66. While Mr. Cartright was frantically attempting to devise a way into the apartment, an NYPD car turned towards the building. Mr. Cartright ran into the street to wave it down.

67. The officers, unfortunately, did not believe Mr. Cartright's story, instead thinking that he was most likely in the middle of a domestic spat.

68. Just then, in response to Ms. Fowler's 911 call, a 911 call from Ms. Dekeyser, as well as calls from other tenants in the building, three NYPD cars arrived at the building. Suddenly, the officers casting doubt on Mr. Cartright's story recognized that there was indeed a dangerous man inside of the locked apartment and entered into the foyer.

69. At some point Lodge heard the eight NYPD officers congregating out in the foyer. Without a sound, Lodge quickly opened the apartment door and hurled a 2 liter bottle of wine at the officers with such force it shattered into hundreds of pieces. Before the officers even had a chance to react, Lodge closed the apartment door. However, he failed to lock it.

70. Concerned about a potential hostage situation involving Ms. Fowler and the couple's son, the police entered the apartment with their guns drawn, prepared for a violent confrontation.

71. Instead, they found Lodge cowering in the bedroom closet. However, Lodge was so massive that they could not handcuff him until he was out of the apartment and in the street.

72. It was only then that Ms. Dekeyser and her friend were able to leave their friend's apartment to see the damage that Defendant's conduct had wrought.

73. Lodge's drunken attack on four innocent people and a young child left behind an apartment in ruins and changed their lives forever.

74. Plaintiffs commence this action to recover for the damages caused by Lodge's violence during the attack and the inability of the family to erase the memory of the event.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Battery)

75. Plaintiffs incorporate herein by reference the allegations set forth in the preceding paragraphs.

76. Defendant's violent and criminal acts committed against Plaintiffs Cartright and Dekeyser amounted to a series of harmful and offensive contacts to the person of Plaintiffs Cartright and Dekeyser, all of which were done intentionally by Defendant without their consent.

77. As a direct and proximate result of the aforementioned batteries, Plaintiffs Cartright and Dekeyser have suffered, and will continue to suffer, physical injury, pain and suffering, serious psychological and emotional distress, mental anguish, embarrassment and humiliation.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Assault)

78.     Plaintiffs incorporate herein by reference the allegations set forth in the preceding paragraphs.

79.     Defendant's violent and criminal acts committed against Plaintiffs amounted to a series of events creating a reasonable apprehension in Plaintiffs of immediate harmful or offensive contact to Plaintiffs' persons, all of which were done intentionally by Defendant and without Plaintiffs' consent.

80.     As a direct and proximate result of the aforementioned assaults, Plaintiffs have suffered, and will continue to suffer, physical injury, pain and suffering, serious psychological and emotional distress, mental anguish, embarrassment and humiliation.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress)

81.     Plaintiffs incorporate herein by reference the allegations set forth in the preceding paragraphs.

82.     Defendant engaged in conduct toward Plaintiffs that is extreme and outrageous so as to exceed the bounds of decency in a civilized society; namely, he violently attacked Plaintiffs, broke into Plaintiff Cartright and Fowler's home, threatening their safety and the safety of their young son.

83.     By his actions and conduct, Defendant intended to and did intentionally or recklessly cause Plaintiffs to suffer severe emotional distress.

84.     As a direct and proximate result of Defendant's conduct, Plaintiffs have suffered, and continue to suffer, severe emotional distress, for which they are entitled to an award of damages.

85. Defendant's extreme and outrageous conduct was knowing, malicious, willful and wanton, entitling Plaintiffs to an award of punitive damages.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (False Imprisonment)

86. Plaintiffs incorporate herein by reference the allegations set forth in the preceding paragraphs.

87. Defendant committed the aforementioned actions, and thereby confined Plaintiffs without consent or privilege.

88. The aforementioned confinement was without probable cause or privilege.

89. Defendant confined Plaintiffs for the purpose of violently assaulting them.

90. Plaintiffs did not have a reasonable means of escape based on Defendant's conduct and the aforementioned circumstances.

91. As a direct and proximate result of the aforementioned false imprisonment, Plaintiffs have suffered, and will continue to suffer, serious psychological and emotional distress, mental anguish, embarrassment and humiliation.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Gender-Motivated Violence pursuant to NYC Admin. Code § 8-901, *et. seq.*)

92. Plaintiffs incorporate herein by reference the allegations set forth in the preceding paragraphs.

93. The above-described conduct of Defendant constitutes a "crime of violence" and a "crime of violence motivated by gender" against Plaintiff Dekeyser as defined by New York City Administrative Code § 8-903.

94. The above-described conduct of Defendant constitutes a "crime of violence" against Plaintiff Dekeyser motivated (i) by her gender, (ii) on the basis of her gender, and/or (iii) due, at least in part, to an animus based on her gender.

95. Defendant committed a "crime of violence" against Plaintiff Dekeyser because she is a woman and, at least in part, because he has an animus towards women. Defendant's gender-motivation and animus towards women is demonstrated by, *inter alia*, his prior history of terrorizing women and his repeated acts of using sexist slurs to describe women.

96. As a direct and proximate result of the aforementioned gender-motivated violence, Plaintiff Dekeyser has suffered, and will continue to suffer, physical injury, pain and suffering, serious psychological and emotional distress, mental anguish, embarrassment and humiliation, entitling her to an award of compensatory damages.

97. Defendant's gender-motivated violence against Plaintiff Dekeyser entitles her to punitive damages and an award of attorneys' fees and costs.

### AS AND FOR A SIXTH CAUSE OF ACTION
(Conversion)

98. Plaintiffs incorporate herein by reference the allegations set forth in the preceding paragraphs.

99. Defendant Lodge unlawfully entered the home of Plaintiffs Cartright and Fowler without their consent or permission and proceeded to destroy their property, including their furniture, and damage the structure of their apartment.

100. As a direct and proximate result of the aforementioned false imprisonment, Plaintiffs have sustained economic damages to replace the broken property and to repair their home, for which they are entitled to an award of monetary damages.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (Trespass to Chattels)

101. Plaintiffs incorporate herein by reference the allegations set forth in the preceding paragraphs.

102. Defendant Lodge intentionally and unlawfully entered the home of Plaintiffs Cartright and Fowler without their consent or permission and proceeded to destroy their property, including their furniture, and damage the structure of their apartment.

103. By the foregoing actions, Defendant Lodge interfered with Plaintiffs Cartright and Fowler's personal property.

104. As a direct and proximate result of the aforementioned false imprisonment, Plaintiffs have sustained economic damages to replace the broken property and to repair their home, for which they are entitled to an award of monetary damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court enter judgment in their favor and against Defendant, containing the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the United States and the State of New York;

B. An injunction and order permanently restraining Defendant from engaging in such unlawful conduct;

C. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiffs for all monetary and/or economic harm; for all non-monetary and/or compensatory harm, including, but not limited to, compensation for mental anguish; all other monetary and/or non-monetary losses suffered by Plaintiffs;

D. An award of punitive damages;

    E.    An award of costs that Plaintiffs have incurred in this action, as well as Plaintiffs' reasonable attorneys' fees to the fullest extent permitted by law; and

    F.    Such other and further relief as the Court may deem just and proper.

<b><u>JURY DEMAND</u></b>

Plaintiffs hereby demand a trial by jury on all issues of fact and damages stated herein.

Dated: December 21, 2015　　　　　　　　Respectfully submitted,
       New York, New York

                                           **WIGDOR LLP**

                                           By: _____
                                                 Douglas H. Wigdor
                                                 Jeanne M. Christensen
                                                 Renan F. Varghese

                                           85 Fifth Avenue
                                           New York, NY  10003
                                           Telephone:  (212) 257-6800
                                           Facsimile:  (212) 257-6845
                                           dwigdor@wigdorlaw.com
                                           jchristensen@wigdorlaw.com
                                           rvarghese@wigdorlaw.com

                                           *Counsel for Plaintiffs*